IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| MELCHOR REYES, | : | Civil Case 1:12 CV 25 TC |
| Petitioner, | : | Criminal Case 1:09 CR 45 TC |
| vs. | : | ORDER AND MEMORANDUM DECISION DENYING § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | | |
| | | Judge Tena Campbell |

A grand jury indicted Petitioner Melchor Reyes[1] on a charge of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Mr. Reyes plead guilty to the charge, and the district court sentenced Mr. Reyes to 120 months in custody, the minimum mandatory sentence. Mr. Reyes did not appeal his conviction.

Mr. Reyes has now filed a motion to vacate his sentence under 28 U.S.C. § 2255, asserting two grounds in support of his motion. First, he contends that he received ineffective assistance of trial counsel because his trial counsel did not file an appeal despite Mr. Reyes's

---

[1] Mr. Reyes's wife, Maria Reyes, was named in the indictment. She later plead to a felony information that charged possession with intent to distribute 50 grams of methamphetamine.

request to do so.[2]  Second, he contends that his trial counsel was ineffective because at sentencing he did not move for a downward departure under U.S. Sentencing Guidelines (USSG) Manual § 5C1.2 (2004).  Contrary to Mr. Reyes's assertions, he did not ask his attorney to file an appeal and his attorney did argue, both in writing and at the sentencing hearing, for a departure under USSG § 5C1.2.  For those reasons, his motion is DENIED.

## ANALYSIS

### Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove that his counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. Furthermore, the defendant must show that counsel's performance fell below an objective standard of reasonableness.  Id. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.

To establish prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[2]At the request of the United States, the court held an evidentiary hearing on this issue. Mr. Jeremy Delicino, trial counsel for Mr. Reyes, testified at the hearing.

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  But "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Strickland, 466 U.S. at 697.

    Mr. Reyes's Appeal

In his motion, Mr. Reyes asserted that "petitioner asked his counsel to file an appeal. . . ." (Motion, Dkt. No. 1, at 5.)  However, at the evidentiary hearing, Mr. Reyes admitted that he did not ask his attorney to file an appeal but maybe just mentioned the issue.  Mr. Reyes's attorney, Jeremy Delicino, testified that although he had no specific memory of the event, had Mr. Reyes asked him to file an appeal, he would have filed a motion to extend the time for filing an appeal. (No such motion was filed.)  In this particular case, before filing the actual notice, he would have discussed the situation thoroughly with Mr. Reyes because of the substantial downward departure Mr. Reyes had been granted.[3]  Mr. Delicino testified that he would have been concerned that if Mr. Reyes filed an appeal, the government would also have filed an appeal, challenging the court's departure from the guideline range.  Given Mr. Reyes's admission and the credible testimony of his counsel, the record does not support the first ground Mr. Reyes cites in support of his motion.

---

[3] Mr. Reyes's advisory guideline range was 210 months to 262 months. (Pre-Sentence Report at ¶ 50.)  The court imposed a sentence of 120 months.

Departure under USSG § 5C1.2

As a second ground, Mr. Reyes maintains that his trial counsel was ineffective because he failed to ask the court for a departure under USSG § 5C1.2.

Section 5C1.2 allows a court to impose a sentence below a statutory minimum if the defendant meets certain criteria. This provision is commonly called "the safety valve." One of the criteria is that the defendant did not possess a firearm in connection with the offense of conviction. USSG § 5C2.2(a)(2). Because police officers found numerous firearms inside Mr. Reyes's residence, including six in the master bedroom, the court found that Mr. Reyes did not meet the criteria and imposed the minimum mandatory sentence, 120 months in custody.[4]

Mr. Reyes's counsel, Jeremy Delicino, argued, both in his pre-hearing memorandum and at the hearing itself, that despite the firearms in Mr. Reyes's residence, Mr. Reyes did meet the criteria and the court should grant him a departure under the safety valve:

> Although the defendant does not dispute the enhancement levied for his possession of firearms pursuant to § 2D1.1(b)(1), he believes that receipt of such an enhancement does not preclude him from receiving a reduction under § 5C1.2. Indeed, while the enhancement for weapons possession is triggered under § 2D1.11(b)(1) by mere possession without more, the safety valve provision only preludes [sic] the possession of firearms "in connection with the offense." See § 5C1.2(a)(2). Thus, one may receive both an enhancement for the possession of firearms as well as a reduction under the safety valve, provided that the possession of the firearms was not "in connection with the offense."
>
> In this case, the drugs found on the defendant's property were located in a window well outside, in a vehicle parked on the property, and inside a cooler located in the kitchen. The firearms that were located in the house were found

---

[4] The 120-month sentence was significantly below the guideline range of 210-260 months. (Feb. 2, 2011 Sentencing Tr. (Dkt. No. 110 in 1:09-cr-45) at 23.)

upstairs and were not near any of the drugs seized. In addition, there was no indication from the confidential informant used in the investigation that either Maria or Melchor Reyes possessed a firearm when drugs were sold to the informant. Because the firearms were not possessed "in connection with the offense," the defendant should not be precluded from safety valve relief.

(Def.'s Supplemental Am. Position Re: Pre-Sentence Report (Dkt. No. 100 in 1:09-cr-45) at 1-2 (internal footnote omitted).) At the sentencing hearing, Mr. Delicino renewed his argument that the safety valve should apply.[5] (See Feb. 2, 2011 Sentencing Tr. at 17-21.)

Ultimately, the court concluded that Mr. Reyes was not entitled to a departure under the safety valve. (Id. at 21-23.) Nevertheless, because Mr. Reyes's counsel did ask for such a departure, the record does not support the second ground cited by Mr. Reyes.

## ORDER

For the reasons stated above, Petitioner Melchor Reyes's Petition is DISMISSED.

SO ORDERED this 24th day of September, 2012.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

---

[5] The government argued at the sentencing hearing that not only had Mr. Reyes possessed firearms in connection with his drug trafficking offense, but that he had failed to give full and truthful testimony at his debriefing with government agents (see Feb. 2, 2011 Sentencing Tr. (Dkt. No. 110 in 1:09-cr-45) at 7-17), one of the criteria a defendant must meet to receive a departure under the safety valve (see USSG § 5C1.2(a)(5)).